# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### WESTERN DIVISION

MICHAEL LEWIS AND GENEVA
D. LEWIS,

      Plaintiffs,

      v.

300 WEST LLC., *et al.*

      Defendants.

Case No. 18-cv-50186

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiffs in this lawsuit sue under the Resource Conservation and Recovery Act (RCRA) for injunctive relief and damages arising from the contamination of their groundwater supply. Several Defendants have moved to dismiss Plaintiffs' complaint. For the reasons explained below, the Court denies three of the motions in full [36], [39], [51], and grants in part and denies in part the fourth [41].

A.    Factual Background[1]

Plaintiffs Michael Lewis and Geneva D. Lewis own a piece of real property located at 4913 Ritz Road, in Marengo, Illinois. They purchased the property in April 2012 and have resided there ever since. At some point, they learned that their groundwater supply, a well, had been contaminated. They sue here for injunctive relief and compensatory and punitive damages.

---

[1] These facts are taken from Plaintiff's amended complaint [57], documents attached to the amended complaint, and documents central to the amended complaint and to which it refers. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).

1. <u>Procedural History</u>

Plaintiffs filed this lawsuit June 6, 2018. *See* [1]. Their initial complaint named 300 West LLC; The Arnold Engineering Co., d/b/a The Arnold Engineering Company; Arnold Magnetic Technologies Corporation, d/b/a Arnold Magnetic Technologies; Arnold Magnetic Technologies, LLC; Arnold Magnetic Technologies Holdings Corporation; Allegheny Technologies Incorporated, f/k/a Allegheny Technologies Inc.; Allegheny International, Inc.; Allegheny Ludlum Corporation, f/k/a Allegheny Ludlum Steel Corporation; Allegheny Ludlum, LLC; Flexmag Industries, Inc.; Arnold Magnetic Technologies; SPS Technologies, Inc.; Precision Castparts Corp.; Audax Group, LLC; Compass Group Diversified Holdings, LLC; and MPR Management Inc. [1] at p. 1. They asserted claims against all Defendants under the RCRA (count I), for negligence (count II), private nuisance (count III), and trespass (count IV). *Id.* at ¶¶ 45–77.

Several Defendants–Precision Castparts Corp. [36]; 300 West LLC [39]; MPR Management, Inc. [51]; and Compass Group Diversified Holdings LLC, Arnold Magnetic Technologies Holdings Corporation, Arnold Magnetic Technologies Corporation, The Arnold Engineering Co., and Flexmag Industries [41]–moved to dismiss. In response, Plaintiffs voluntarily dismissed Allegheny Technologies Incorporated f/k/a Allegheny Technologies Inc.; Allegheny Ludlum, LLC, and Allegheny Ludlum Corporation, *see* [34]; they also voluntarily dismissed Arnold

Magnetic Technologies, LLC and Audax Management Company, LLC, *see* [66]; and they amended their complaint as to the remaining Defendants, *see* [57].[2]

Plaintiffs' First Amended Complaint ("FAC") asserts the same claims as the original complaint. *See id.* at ¶¶ 43–75. As a result, after Plaintiffs filed the FAC, the Defendants (who had previously moved to dismiss) advised that they wished to stand on their pending motions. *See* [61]. The parties, therefore, briefed the motions, and they are now ripe for resolution.

2.    Plaintiffs' Allegations

Plaintiffs own and reside at 4913 Ritz Road, in Marengo, Illinois. [57], ¶ 12. The sole source of water on that property is a private well. *Id.* at ¶ 1. In June of 2013, the Illinois Department of Public Health notified Plaintiffs that water samples taken from their well revealed the presence of dangerous chemicals, including 1,1-dichloroethene ("1,1-DCE") and trichloroethene ("TCE"). *Id.* at ¶¶ 1, 9. Indeed, hazardous substances contaminate properties throughout and along Ritz Road in Marengo. *Id.* at ¶ 7. The source of the contamination is 300 N. West Street in Marengo, a site comprised of as many as 19 individual parcels situated on approximately 92.5 acres. *Id.* at ¶ 2. This site is currently owned by Defendant 300 West LLC and currently operated by Defendant Arnold Engineering Co. *Id.* at ¶ 3.

The FAC alleges that contaminants from the Site "migrated in groundwater to contaminate the groundwater and soils of Plaintiffs' property, as well as the potable water well owned and used by Plaintiffs." *Id.* at ¶ 32–33. The FAC alleges that

---

[2] Additionally, in the FAC, [57], Defendants Flexmag Industries, Inc. and Arnold Magnetic Technologies became Flexmag Industries, Inc., d/b/a Arnold Magnetic Technologies.

Defendant 300 West owns the Site, and that "each Defendant generated and/or transported materials containing hazardous substances to the Site." [57], ¶ 27, 31. More specifically, the FAC alleges the following as to each Defendant:

- Defendant Arnold (a moniker defined to include The Arnold Engineering Co., d/b/a The Arnold Engineering Company, its predecessors and/or successors, including but not limited to, Arnold Magnetic Technologies Corporation and Arnold Magnetic Technologies LLC, *id.* at ¶ 18, and possibly also Arnold Magnetic Technologies Holdings Corporation, *see id.* at ¶ 17) owned and operated the Site from 1940 to 2006, when it sold the property to 300 West. *Id.* at ¶ 34. Plaintiffs allege, on information and belief, that 300 West leased the Site back to Arnold. *Id.* Plaintiffs allege that, since 1940, Arnold's operations on the Site have generated "solid wastes" or "hazardous wastes" within the meaning of the RCRA. *Id.* at ¶ 35.

- From approximately 1946 to 1986, Defendant AI owned and operated Arnold, and/or controlled those processes and activities at the Site that generated such wastes. *Id.* at ¶ 36.

- From approximately 1986 to 2003, Defendant SPS, a predecessor of Defendant Precision, owned and operated Arnold and/or controlled those processes and activities at the Site. *Id.* at ¶37. And, from 2003 to 2005, Defendant Precision itself owned and operated Arnold and, through such ownership, controlled those processes and activities that generated such wastes and caused the contamination. *Id.*

- From approximately January 2005 to March 5, 2012, Defendant Audax Group owned Arnold Magnetic Technologies Corporation and managed, operated, and controlled those processes and activities. *Id.* at ¶ 38.

- On or about March 5, 2012, Defendant Audax Group sold Arnold Magnetic Technologies Corporation to [Compass Group Diversified Holdings LLC], which also controls Arnold Magnetic Technologies Holdings Corp. *Id.* at ¶¶ 39–40.

- From approximately 2006 to the present, Defendant MPR has been responsible for removal of the contamination at the Site and adjoining properties; yet, MPR has done nothing to remove contamination from Plaintiffs' property or to restore Plaintiffs' potable water supply. *Id.* at ¶ 41.

Finally, the FAC alleges that:

[t]hrough their ownership, control, or operation of the Site, or ownership, control, or operation of the processes and activities generating solid waste on the Site, or their control or operation of efforts to remove Contamination from the Site and adjoining properties, Defendants have contributed or are contributing to the past or present handling, storage, or disposal at the Site of those "solid wastes" and "hazardous wastes," . . . and which handling, storage, or disposal have presented and may present an imminent and substantial endangerment to health or the environment within the meaning, and in violation, of 42 U.S.C. § 6972(a)(1)(B).

*Id.* at ¶ 42.[3]

Plaintiffs seek relief under the citizen suit provision of the Resource Conservation and Recovery Act (RCRA), as amended, 42. U.S.C. § 6901 *et seq.* They also assert state law claims of negligence, private nuisance, and trespass. The FAC seeks injunctive relief, damages (compensatory and punitive), and disgorgement of profits.

3. <u>The Illinois Enforcement Action</u>

In the FAC, Plaintiffs acknowledge the existence of a prior state enforcement action relating to groundwater contamination at and from the Site, and they acknowledge the existence of a Consent Order executed by two named Defendants, 300 West and The Arnold Engineering Co. on June 1, 2016. [57], ¶¶ 57–59. They allege, however, that the remedies they seek fall outside the scope of a Consent Order executed in that action on or about June 1, 2016. *Id.* at ¶ 57. Plaintiffs claim that that Consent Order does not provide for any remedial response to, or otherwise

---

[3] The FAC also names Allegheny International Incorporated but does not allege anything specifically as to this Defendant, which has never been served and has not appeared in the case. Defendant SPS Technologies, Inc. also has not appeared, though it appears Plaintiffs served this Defendant via the Illinois Secretary of State. To date, Plaintiffs have not moved for default as to Defendant SPS.

address, the imminent and substantial endangerment presented by Defendants' failure to treat groundwater contamination. *Id.* at ¶ 58.

By way of background as to the enforcement action, on May 14, 2013, at the direction of the Illinois Environmental Protection Agency ("EPA"), water samples were taken from thirteen private wells located near the Site, including from Plaintiffs' property. On June 6, 2013, the Illinois Department of Public Heath notified Plaintiffs that water samples from their property contained various Volatile Organic Compounds (VOCs), including 1, 1-dichloroethylene and trichloroethene [57-2]. The concentration of the VOCs exceeded their regulatory concentrations for drinking water, and the IDPH recommended that Plaintiffs not use their water for drinking, cooking, or bathing.

On June 14, 2013, upon the request of the Illinois EPA, the State of Illinois, through the Illinois Attorney General, sued 300 West LLC and Arnold Engineering Co. in McHenry County Circuit Court, alleging violations of Section 43(a) of the Illinois Environmental Protection Act and seeking injunctive relief. [42-2]. In its state court complaint, the State alleged that The Arnold Engineering Co., a/k/a Arnold Magnetic Technologies Corporation, has, for approximately 100 years, owned and operated a manufacturing facility at the Site and historically "utilized chlorinated solvents in its product processes . . . ." *Id.* at ¶ 5. The state complaint alleged that, in or about June of 2003, Arnold sold the Site to 300 West, though Arnold continued to conduct manufacturing operations at the Site, operating on a lease from 300 West after the sale. *Id.* at ¶ 6. The state complaint described testing done at

and near the Site and alleged that chlorinated VOCs released at the Site had migrated through the groundwater, contaminating residential wells; testing showed that chlorinated VOCs exceeded the Illinois Pollution Control Board's Class 1 Groundwater Quality Regulations in at least two drinking water wells, "thereby threatening the health and safety of the public." *Id.* at ¶ 26. The state complaint identified Plaintiffs' well, at 4913 Ritz Road, as one of the contaminated wells with a class 1 groundwater exceedance about the 7ppb standard for 1,1-DCE and above the 5ppb standard for TCE.[4] [42-2], p. 8.

On June 1, 2016, the State of Illinois, 300 West, and The Arnold Engineering Co., executed a Consent Order to resolve the state enforcement action. *See* [42-4]. Without admitting the violations claimed in the State's complaint, Defendants agreed to: (1) continue to provide bottled water to certain private well owners, including Plaintiffs; (2) continue to conduct water sampling at those private wells; (3) perform all work necessary to hook up the affected properties to the City of Marengo's municipal water supply (including extending the City's water main and water lines, extending water lines from the water main to each property to hook up such properties to the municipal water main, installing a flush hydrant on Ritz Road, conducting any necessary confirmation sampling, providing restorative landscaping, sealing wells as necessary, and repairing any damage caused by any of the associated work. *Id.* at p. 15. 300 West and Arnold also agreed to pay all costs associated with this work and to pay each well owner $2,400. *Id.* at pp. 15–16. 300 West and Arnold

---

[4] The State's testing put Plaintiffs' well at 22ppb for 1,1-DCE and 6.47ppb for TCE, well above the standards (7ppb for 1,1-DCE and 5ppb for TCE).

also agreed to pay a civil penalty of $100,000 to the Illinois EPA, plus a penalty of $30,000 for violations of prior orders; and to pay the Illinois EPA's costs ($70,393.72) and the Illinois Attorney General's costs ($13,892.44). *Id.* at pp. 7–8. The Consent Order provided that, if 300 West and Arnold failed to complete any obligation or failed to comply with their response and reporting obligations, they faced penalties of $300 per day for the first seven days, $500 per day for the next seven days, $750 per day for the next 15 days, and $1,000 per day thereafter until they complied. *Id.* at p. 9. Finally, the Consent Order included provisions for a Remedial Action Plan to address soil and groundwater remediation. *Id.* at pp. 24–27.

With regard to releases and waivers of claims, the Consent Order provided that affected well owners were not required to accept the offer to hook them into the City of Marengo's water, and that declining to hook up did not waive any potential causes of action, rights or remedies with regard to any alleged contamination. *Id.* at pp. 21–22. Additionally, the Consent Order provided that nothing therein waived, discharged, released, or otherwise impacted "any private causes of action or rights that may exist. . . ." *Id.* at p. 38.

4.    Defendants' Motions to Dismiss the FAC

Before the Court are four motions to dismiss. Defendant Precision Castparts Corp. seeks dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)6). *See* [36]. Precision argues that: (1) this Court lacks subject matter jurisdiction over Plaintiffs' claims because Plaintiffs failed to comply with RCRA's mandatory notice requirement, because Plaintiffs lack standing, and because the FAC represents an

improper collateral attack on the state enforcement action and Consent Order; (2) Plaintiffs' claims are time barred; (3) Plaintiffs' claims are barred by res judicata; and (4) the FAC fails to state a claim for which relief may Plaintiffs' claims fail to state a claim upon which relief can be granted. *Id.*

Defendant 300 West seeks dismissal under Rule 12(b)(6), arguing that Plaintiffs' claims are time-barred, and that the FAC fails to state a claim upon which relief can be granted. *See* [39]. Defendant MPR Management, Inc., likewise, seeks dismissal under Rule 12(b)(6), adopting wholesale the arguments made by Defendant 300 West, LLC. *See* [51].

Defendants Compass Group Diversified Holdings LLC, Arnold Magnetic Technologies Holdings Corporation, Arnold Magnetic Technologies Corporation, The Arnold Engineering Co., and Flexmag Industries, Inc. (collectively, the "Arnold Defendants"), seek dismissal under Rule 12(b)(1), 12(b)(2), and 12(b)(6). *See* [41]. Like Precision, the Arnold Defendants argue that this Court lacks subject matter jurisdiction to hear Plaintiffs' claims because: (1) Plaintiffs lack standing to bring a RCRA claim. given that the injunctive remedies they seek are moot; and (2) Plaintiffs failed to comply with RCRA's notice requirements. The Arnold Defendants also argue that Plaintiffs' claims are barred by res judicata, and that the FAC fails to state a claim for which relief can be granted. *Id.* Finally, these Defendants argue that the FAC must be dismissed under Rule 12(b)(2) as to Defendants Compass Holdings, Arnold Holdings, and Arnold Technologies because personal jurisdiction is lacking as to these entities.

Plaintiffs oppose all four motions.

B.    Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must provide a "short and plain statement of the claim" showing that the pleader merits relief, Fed. R. Civ. P. 8(a)(2), so the defendant has "fair notice" of the claim "and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)).    A complaint must also contain "sufficient factual matter" to state a facially plausible claim to relief—one that "allows the court to draw the reasonable inference" that the defendant committed the alleged misconduct.    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).    This plausibility standard "asks for more than a sheer possibility" that a defendant acted unlawfully. *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."    *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

In evaluating a complaint under Rule 12(b)(6), this Court accepts all well pleaded allegations as true and draws all reasonable inferences in Plaintiffs' favor. *Iqbal*, 556 U.S. at 678.    This Court does not, however, accept a complaint's legal conclusions as true.    *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

On a motion to dismiss, this Court may consider the complaint itself, documents attached to the complaint, documents central to the complaint and to

which the complaint refers, and information properly subject to judicial notice. *Williamson*, 714 F.3d at 436.

A motion under Rule 12(b)(1) seeks to dismiss a case for lack of subject matter jurisdiction. Courts evaluating such motions still accept all the allegations in the complaint but may also consider "whatever evidence has been submitted on the issue" to determine whether subject matter jurisdiction exists. *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995); *see also Maximum Indep. Brokerage, LLC v. Smith*, 218 F. Supp. 3d 630, 635 (N.D. Ill. 2016).

A motion under Rule 12(b)(2) seeks to dismiss a complaint for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2); *Abbott Labs., Inc. v. BioValve Techs., Inc.*, 543 F. Supp. 2d 913, 918 (N.D. Ill. 2008). When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff must make a prima facie jurisdictional showing. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). In evaluating whether a plaintiff makes a prima facie showing, this Court resolves factual disputes in the plaintiff's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If a defendant submits evidence opposing jurisdiction, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Id.* at 783.

C.    Discussion & Analysis

Collectively, moving Defendants raise issues concerning personal jurisdiction, subject matter jurisdiction, and the sufficiency of Plaintiffs' pleading. The Court considers each below.

1.     <u>Personal Jurisdiction</u>

The Arnold Defendants argue that personal jurisdiction is lacking as to Defendants Compass Holdings, Arnold Holdings, and Arnold Technologies. Plaintiffs bear the "burden of establishing personal jurisdiction." *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 799 (7th Cir. 2014). Where, as here, the Court can resolve the motion on the papers without an evidentiary hearing, Plaintiffs need only establish a prima facie case of personal jurisdiction. *Kipp v. Ski Enterprise Corp. of Wisconsin, Inc.*, 783 F.3d 695, 697 (7th Cir. 2015).

Generally, this Court is permitted to exercise personal jurisdiction over out-of-state defendants when the defendant has "certain minimum contacts with [Illinois] such that maintenance of the suit [here] does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). There are two types of personal jurisdiction: (1) general jurisdiction, which exists only when the party's affiliations with Illinois "are so constant and pervasive as to render [it] essentially at home" here, *Daimler AG v. Bauman*, 134 S.Ct. 746, 751 (2014)(quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011)); and (2) specific jurisdiction, which is "case-specific" and exists where the plaintiff's claim is "linked to the [defendant's] activities or contacts with" Illinois. *Kipp*, 783 F.3d at 697-98.

Plaintiffs apparently concede a lack of general jurisdiction, and, based upon the record, this Court concurs. Nothing in the FAC suggests that any of these entities is "at home" in the State of Illinois. The FAC alleges that Compass Group Diversified

Holdings LLC and Arnold Magnetic Technologies, LLC are Delaware limited liability companies, *see* [57], p. 1, ¶¶16–24, and Arnold Magnetic Technologies Holdings Corporation is a Delaware Corporation. *Id.* at ¶ 17. The FAC further alleges that Arnold Magnetic Technologies Holding Corporation "has controlled or share in the control of the Arnold operations" since approximately 2005, and that Compass purchased Arnold Magnetic Technologies Corporation from Audax in March 2012 and has controlled Arnold Magnetic Technologies Holdings Corporation since 2012. *Id.* at ¶¶ 39, 40. These allegations are insufficient to confer general personal jurisdiction.

Plaintiffs argue that the FAC confers personal jurisdiction because it alleges that the subject Defendants committed "multiple torts." [72], p. 4. To the extent that is true, it is only because Plaintiffs' allegations simply lump all Defendants into a single entity. Plaintiffs have not alleged anything specifically as to these Defendants to justify the exercise of general jurisdiction here.

Specific jurisdiction, however, exists when a defendant "has 'purposefully directed' his activities at residents of the forum...and the litigation results from the alleged injuries that 'arise out of or relate to' those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)(quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *Helicopteros Nacionales*, 466 U.S. at 414). The "contacts supporting specific jurisdiction can take many different forms" but ultimately, "the key is purposefulness" and the "due process clause will not permit jurisdiction to be based on contacts with the forum that are random, fortuitous, or attenuated."' *Linkepic Inc v. Vyasil, LLC*, No. 12-cv-09058, 2015 WL 7251936, at *4 (N.D. Ill. Nov.

17, 2015)(quoting *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010)). Additionally, establishing minimum contacts is not enough. To justify the exercise of specific personal jurisdiction over the challenging Defendants, the FAC would have to demonstrate "not only that the defendant [has] minimum contacts with the forum state but also that [Plaintiffs' claims] against the defendant 'arise out of or relate to' those contacts." *uBID*, 623 F.3d at 429 (quoting *Burger King*, 471 U.S. at 472-73; *Helicopteros Nacionales*, 466 U.S. at 414; *Tamburo v. Dworkin*, 601 F.3d 693, 708 (7th Cir. 2010)). Here, at best, Plaintiffs allege that the challenging Defendants held an ownership interest in the entity or entities operating at the Site.

Initially, the fact that Plaintiffs' allegations lump together all of the named entities complicates this Court's analysis, making it impossible to discern which of the alleged activities and contacts relate to which Defendant. Plaintiffs also use the term "Arnold" to refer to "The Arnold Engineering Co., d/b/a The Arnold Engineering Company and its predecessors and/or successors, including but not limited to, Arnold Magnetic Technologies Corporation [and] Arnold Magnetic Technologies, LLC." [57], ¶ 18. As a result, the current allegations do not permit this Court to find that the challenging Defendants engaged in any relevant activities in Illinois for the purposes of specific personal jurisdiction.

Moreover, Plaintiffs premise their personal jurisdiction argument solely on the fact that the challenging Defendants held an ownership interest (some more attenuated than others) in The Arnold Engineering Company, which Plaintiffs allege operate the Site. [57], ¶ 3. But "constitutional due process requires that personal

jurisdiction cannot be premised on corporate affiliation or stock ownership alone where corporate formalities are substantially observed and the parent does not exercise an unusually high degree of control over the subsidiary." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943 (7th Cir. 2000). Plaintiffs have not alleged any deficiencies in the corporate formalities here' nor have they alleged that any of the challenging Defendants exercised a high (let alone unusually high) degree of control over The Arnold Engineering Company.

In short, Plaintiffs have failed to make out a prima facie case for personal jurisdiction as to the challenging Defendants. Accordingly, Defendants' motion to dismiss [41] is granted as to Compass Group Diversified Holdings LLC, Arnold Magnetic Technologies, LLC, and Arnold Magnetic Technologies Holdings Corporation.

### 2. Timeliness of Plaintiffs' Claims

Several Defendants argue that Plaintiffs' claims are time-barred. All parties agree that Illinois' five-year statute of limitations for damage to property applies. Plaintiffs allege that the Illinois Department of Public Health notified them in June 2013 that their well was contaminated. [57], at ¶ 9 (Plaintiffs attach the June 6, 2013 letter from IDPH to the FAC). Plaintiffs filed their complaint on June 6, 2018, arguably the last day before the 5-year statute of limitations ran.

Despite this, Defendants argue that Plaintiffs knew or should have known about the contamination when the Illinois EPA sampled their well. If that were true, Plaintiffs claims likely would be barred. Under Illinois' discovery rule, the statute of

limitations begins to run when Plaintiffs become "possessed of sufficient information concerning [their] injury to put a reasonable person on inquiry to determine whether actionable conduct was involved." *Vector-Springfield Properties, Ltd. V. Central Illinois Light Co., Inc.,* 108 F.3d 806, 809 (1997). But nothing in the FAC suggests that Plaintiffs knew of their injury before they received the IDPH letter. Thus, on the record before it, the Court cannot say that Plaintiffs' claims are time-barred at this point in the proceedings, and the motions to dismiss on this basis are denied.

3.  Subject Matter Jurisdiction

The Court turns next to Defendants' various arguments concerning subject matter jurisdiction. As stated above, Defendants argue that Plaintiffs lack standing to pursue a RCRA claim, and they argue that Plaintiffs failed to comply with RCRA's mandatory notice requirements.

(a)  Relevant Provisions of the RCRA

As a comprehensive environmental statute, the primary purposes of RCRA include reducing a "generation of hazardous waste" and ensuring "the proper treatment, storage, and disposal" of waste "'to minimize the present and future threat to human health and the environment.'" *Meghrig v. KFC W., Inc.*, 516 U.S. 479,483 (quoting 42 U.S.C. § 6902(b)). The Administrator of the Environmental Protection Agency (EPA) remains responsible for the implementation and enforcement of the RCRA. *Id.* at 483. RCRA, however, "does not give sole responsibility to federal and state environmental agencies" and merely "assume they will enforce the law adequately." *Atkins v VIM Recycling*, 644 F.3d 483, 486 (2011). Instead, RCRA allows

"private citizens to enforce its provisions in some circumstances" by way of its citizen-suit provision. *Meghrig,* 516 U.S. at 484; 42 U.S.C. § 6972 (a).

The RCRA citizen-suit provision creates a "general authority to bring citizen suits and provides for jurisdiction in federal courts." *Meghrig,* 516 U.S. at 484. Under this provision, a citizen can bring forward, on his own behalf, two types of claims: (1) a violation claim; and (2) an endangerment claim. A violation claim may be brought against

> any person…(including (a) the United States, and (b) any government instrumentality or agency, to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter.

42 U.S.C. § 6972(a)(1)(A). An endangerment claim may be brought against

> any person, including …[a] past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment.

42 U.S.C. § 6972(a)(1)(B). The citizen suit provision of RCRA, "was designed to provide a remedy that ameliorates present or obviates the risk of future 'imminent' harms." *Meghrig,* 516 U.S. at 486. Specifically, Section (a)(1)(B) allows a private party to bring a citizen suit against "certain responsible persons, including former owners," only when such hazardous waste may present an *imminent* and substantial endangerment to health or environment. *Id.* (emphasis added). Under its plain terms, Section (a)(1)(B) is limited: it applies when an endangerment is imminent–

that is, if it threatens to occur immediately, and it does not apply when the subject waste no longer presents such a danger. *Id.* at 485–86.

Plaintiffs' FAC claims that Defendants violated the endangerment provision of RCRA, 42 U.S.C. § 6972(a)(1)(B). Plaintiffs allege that:

> [t]hrough their ownership, control, or operation of the Site, or ownership, control, or operation of the processes and activities generating solid waste on the Site, or their control or operation of efforts to remove Contamination from the Site and adjoining properties, Defendants have contributed or are contributing to the past or present handling, storage, or disposal at the Site of those "solid wastes" and "hazardous wastes," . . . and which handling, storage, or disposal have presented and may present an imminent and substantial endangerment to health or the environment within the meaning, and in violation, of 42 U.S.C. § 6972(a)(1)(B).

*Id.* at ¶ 42.

### (b)   Plaintiffs' Standing

Defendants argue that, because the Illinois EPA is monitoring the Site, and because the remediation plan spelled out in the Consent Order was executed to resolve the state enforcement action, Plaintiffs lack standing to pursue any endangerment claim. Not so. The Seventh Circuit has held that the "RCRA prohibition on bringing a citizen suit when the EPA or a state agency 'has commenced and is diligently prosecuting' an action to require compliance with the same permit, standard, or other requirement falls into the category of claims-processing rules," and is not jurisdictional. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 492 (7th Cir. 2011). Indeed, in *Adkins*, the Seventh Circuit noted that "RCRA's limits on citizen suits appear in separate provisions that do not 'speak in jurisdictional terms or refer in any

way to the jurisdiction of the district courts."' *Id.* (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982); 42 U.S.C. §§ 6972(b)(1), (b)(2).

### (c) Improper Collateral Attack

Defendants also argue that Plaintiffs' claims amount to an improper collateral attack on the Consent Order entered in the state enforcement action. Defendants contend that a collateral attack "exists when 'the substance of the claim reveals that a consent decree is implicated, and its implementation would be adversely affected."' [37], p. 11. But the FAC undermines the argument: the FAC alleges that the remedies Plaintiffs seek "are outside the scope of the Consent Order." [57], ¶ 57. Plaintiffs allege that the Consent Order does not provide for any remedial response to, or otherwise address, the imminent and substantial endangerment present by Defendants' failure to treat groundwater contamination, Defendants' failure to connect Plaintiffs to a permanent source of clean water, or Defendants' failure to sample (and remedy as warranted) Plaintiffs' property for vapor contamination caused by releases of the contamination from the Site to shallow soils and aquifer underlying Plaintiffs' Property." *Id.* at ¶ 58. Although the Consent Order plainly does include a Remedial Action Plan for groundwater contamination, it also expressly provided that it was not intended to waive, discharge, release, or otherwise impact any private causes of action or rights that may exist. [42-4], p. 38. The mere existence of the state enforcement action and the Consent Order, without more, fail to render Plaintiffs' claims invalid. On the contrary, they plainly are allowed (and arguably anticipated) despite the Consent Order.

(d)     <u>Failure to Provide Mandatory Notice</u>

Defendants also argue that Plaintiffs' RCRA must be dismissed for lack of subject matter jurisdiction because Plaintiffs failed to satisfy RCRA's mandatory notice requirement.  Before filing a lawsuit under § 6972(a)(1)(B), a plaintiff must provide each defendant with a notice of intent to sue at least ninety days before the suit is filed. 42 U.S.C. § 6972(b)(2)(A).  Compliance with this notice provision is mandatory. *E.g., Hallstrom v. Tillamook Cnty.*, 493 U.S. 20, 26 (1989).  Defendants concede that Plaintiffs sent the mandatory notice in September 2013, but they argue that Plaintiffs failed to send the notice to all named Defendants.  In particular, Defendants argue that Plaintiff failed to send the required notice to Arnold Technologies Holdings Company[5] and Flexmag Industries.  Plaintiffs concede that this is so.  Accordingly, the Court finds that it lacks jurisdiction to hear Plaintiffs' claims as to these Defendants.

Defendants also argue that RCRA required Plaintiffs to send a new notice before filing suit in 2018.  They argue that the state enforcement action changed the landscape such that the 2013 notice could no longer be expected to educate Defendants about what Plaintiffs believed they were doing wrong.  Defendants have not offered any authority to support the notion that Plaintiffs' notice was somehow stale.  On the contrary, the initial notice requests the same remedy the FAC requests:

---

[5] Because of nature of the drafting of the FAC, the record remains unclear whether this is the same entity as Arnold Magnetic Technologies Holdings Corporation, also referred to as Arnold Magnetic Technologies Holding Company. But if the entities are the same, the dismissal for lack of subject matter jurisdiction trumps the dismissal for lack of personal jurisdiction.

the remediation of Plaintiffs' water source. Accordingly, the Court rejects Defendants' arguments that the 2013 Notice was stale.

4. <u>Res Judicata</u>

Defendants argue that the state enforcement action bars the Plaintiffs' RCRA claim. To be sure, a private party may not bring suit under RCRA "if the State…has commenced and is diligently prosecuting an action under subsection (a)(1)(B)." 42 U.S.C. § 6972 (a)(2)(C)(i). But the state enforcement action was not prosecuted under the RCRA; rather, it was prosecuted (and resolved) under Illinois law. Accordingly, the Court rejects Defendants' argument regarding a RCRA bar.

Defendants also argue that res judicata bars Plaintiffs' claims generally. For res judicata to apply, Defendants must demonstrate: (1) a final judgment on the merits; (2) an identity of the causes of action; and (3) an identity of parties or their privies. *People Who Care v. Rockford Bd. Of Educ.*, 68 F.3d 172, 177 (7th Cir. 1995). The Court finds that res judicata does not apply here for several reasons.

First, the 2016 Consent Order was effectively a settlement agreement, the terms of which have yet to play out; it is, arguably on the record before this Court, not a final judgment on the merits.

Second, although both complaints alleged environmental contamination and sought remediation, the causes of action lack identity. For starters, Plaintiffs seek compensatory and punitive damages, whereas the Illinois Attorney General did not.

Finally, the current record fails to establish that Plaintiffs and the Illinois Attorney General constitute "privies." Privity exists when "there is a commonality of

interest between the two entities" and when they "sufficiently represent" each other's interests." *Studio Art Theatre v. City of Evansville*, 76 F.3d 128, 131 (7th Cir. 1996). The Seventh Circuit has explained that determining privity "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Bernstein v. Bankert*, 733 F.3d 190, 226 (7th Cir. 2012) (quoting *Tice v. Am. Airlines, Inc.*, 162 F.3d 966, 971 (7th Cir. 1998)). The parties must be so closely aligned in their interests that one serves as a virtual representative of the other in a prior action. *People Who Care*, 68 F.3d at 177.

A person who was not a named party to the previous state action may be (but is not necessarily) in privity "with an official or agency invested by law with authority to represent the person's interests." *Friends of Milwaukee's Rivers v. Milwaukee Metropolitan Sewage District*, 382 F.3d 743, 759 (2004). In part, the analysis turns on whether the state agency was diligent in its prosecution: "A person is not bound by a judgment for or against a party who purports to represent him if…[t]he representative failed to prosecute or defend the action with due diligence and reasonable prudence, and the opposing party was on notice of facts making that failure apparent." *Id.* (quoting *Restat 2d of Judgments § 42).* This does not "require a state agency to have perfect foresight," but this Court must assess "whether the actions are calculated to eliminate the cause(s) of the violations". *Id.* at 760. In assessing privity, courts consider whether a diligent prosecution achieves a permanent solution or whether violations will continue notwithstanding the settlement or agreement with the state agency.

In *Friends of Milwaukee's Rivers*, the Seventh Circuit determined that a stipulation entered in 1977 had not eliminated large-scale environmental violations, and that the state agency that secured that stipulation thus had not stood in privity with private litigations. *Id*. at 764. As a result res judicata did not bar the private action.

Such may be the case here as well. Taking the allegations of Plaintiffs' complaint as true, it appears that the remediation contemplated in the 2016 Consent Order has not yet solved the problems the State and the Plaintiffs identified. The FAC alleges that the Consent Order "does not provide for any remedial response to, or otherwise address, the imminent and substantial endangerment presented by Defendants' failure[s]." [57] ¶ 58. Although it has only been a few years (far short of the decades that had passed in *Friends of Milwaukee's Rivers*), this Court declines to find privity between the Illinois Attorney General and Plaintiffs in this case, because the contamination persists and Plaintiffs must still rely upon Defendants to provide them with clean water.

### 5.  Failure to State a Claim

Finally, Defendants argue that Plaintiffs' complaint should be dismissed under Rule 12(b)(6) because Plaintiffs have failed to state a claim for which relief can be granted. As stated, for purposes of a motion to dismiss, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor for the plaintiff. *Iqbal*, 556 U.S. at 678. A complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove

no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

The FAC asserts an endangerment claim under RCRA, as well as state law negligence, nuisance, and trespass. As discussed above, Plaintiffs sufficiently pled the elements of an endangerment claim under 42 U.S.C. § 6972(a)(1)(B). Plaintiffs allege a solid or hazardous waste has been generated, Defendants contributed or are contributing to the handling or disposal of said waste, and the waste presents an imminent and substantial endangerment to health or the environment. [57] at ¶¶ 13–14.

In Illinois, a plaintiff asserting a common law negligence claim "must establish the existence of a duty owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Avalos-Landeros v. United States*, 50 F. Supp. 3d 921, 927 (N.D. Ill. 2014). The term "duty" means "a relationship between the defendant and the plaintiff such that the law imposes on the defendant an obligation of reasonable conduct for the benefit of the plaintiff." *Id.* Here, Plaintiffs have sufficiently alleged that Defendants owed a duty to exercise reasonable care and that they breached their duty in several ways, including carelessly and negligently permitting hazardous substances at the Site to invade adjacent residential properties, including Plaintiffs' property. [57], ¶¶ 63–64. Finally, Plaintiffs allege that, as a direct and proximate result of Defendants' acts, Plaintiffs suffered and will continue to suffer injuries, including property damage. *Id.* at ¶ 65.

As to the private nuisance claim, the law requires "a substantial invasion of another's interest in the use and enjoyment of his or her land." *City of Evanston v. Texaco, Inc.*, 19 F. Supp. 3d 817, 825 (N.D. Ill. 2014) (citations omitted). In Illinois, allegations that the defendant's conduct threatens the plaintiff's land with environmental contamination remain sufficient to state a nuisance claim. *Id.* (citations omitted). Here again, Plaintiffs allege sufficiently that Defendants' actions and omissions caused environmental contamination at the Site, and that such contamination has substantially interfered with Plaintiffs' reasonable use, development, and enjoyment of their property. [57], ¶¶ 67–68. Such allegations state a proper private nuisance claim.

In Illinois, to sustain a cause of action for trespass to real property, a plaintiff must allege a wrongful interference with his actual possessory rights in the property. *Simmons v. Catton*, 764 F. Supp. 2d 1012, 1021 (C.D. Ill. 2011) (citing *Loftus v. Mingo*, 511 N.E.2d 203, 210 (Ill. App. Ct. 1987)). To be an actionable trespass, an intrusion has to be such as to subtract from the owner's use of the property. *Id.* (citing *Geller v. Brownstone Condominium Association*, 402 N.E.2d 807, 809 (Ill. App. Ct. 1980). Plaintiffs here allege that Defendants caused contaminants to enter their property, without their consent, and failed to remove such contaminants. [57], ¶ 71–72. They further allege that Defendants' acts and omissions have substantially interfered with their use and enjoyment of their property. *Id.* at ¶ 75.

D.    <u>Conclusion</u>

For the reasons stated in the accompanying Memorandum Opinion and Order, the Court denies the motions to dismiss filed by Defendant Precision Castparts Corp. [36], Defendant 300 West LLC [39], and Defendant MPR Management Inc. [51].  The Court grants in part and denies in part the Arnold Defendants' motion to dismiss [41].  The claims against Arnold Technologies Holdings Company and Flexmag Industries are dismissed for lack of subject matter jurisdiction.  And Defendants Compass Group Diversified Holdings LLC, Arnold Magnetic Technologies, LLC, and Arnold Magnetic Technologies Holdings Corporation (to the extent this is a different entity than Arnold Technologies Holdings Company) are dismissed for lack of personal jurisdiction.  The motion [41] is otherwise denied.

Dated: September 30, 2019

Entered:

John Robert Blakey
United States District Judge